UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | NO.: 2:13-CR-37 |
| ) | |
| DERRICK HENRY CONNOR, ) | |
|     Defendant. ) | |

MEMORANDUM OPINION AND ORDER

The defendant, Derrick Henry Connor ("defendant" or "Connor"), was charged, along with several others, on June 11, 2013, in Count One of an eight-count superseding indictment with conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine. On September 23, 2013, the United States filed an information pursuant to 18 U.S.C. § 851 to establish prior convictions and give notice of its intent to seek enhanced punishment. The information alleges two prior drug felony convictions: (1) on August 10, 1994, defendant was convicted of possession with intent to sell or deliver cocaine in Catawba County, North Carolina Superior Court in case number 94CRS6904; and (2) on February 20, 1996, defendant was convicted with possession with intent to sell or deliver cocaine in Iredell County, North Carolina in case number 95CRS10978.

Pursuant to a negotiated plea agreement, the defendant pled guilty on January 10, 2014, to the lesser included charge of conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine. The United States agreed in the plea agreement to amend its information to establish prior convictions to allege only the Catawba County conviction as a basis for seeking enhanced punishment and to dismiss the other count of the indictment which charged defendant. A lengthy factual stipulation was contained in the plea agreement.

1

Based upon a total offense level of 27 and a criminal history category of I, Connor's guideline imprisonment range is 70 months to 87 months; however, because of the amount of crack cocaine involved and his prior felony drug conviction, a mandatory minimum sentence of ten years applies. In the Presentence Investigation Report ("PSR"), the probation officer noted the safety valve provisions of USSG § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) but stated that "[a]ccording to the United States Attorney's Office, the defendant has not debriefed for Safety Valve purposes," and declined to apply the two-level decrease in offense level of § 2D1.1(b)(16).

The defendant did not object to the PSR. Prior to sentencing, however, defendant filed a sentencing memorandum in which he asserts entitlement to safety valve and the two-level decrease in offense level of § 2D1.1(b)(16). A sentencing hearing was convened on July 30, 2014. The United States opposed defendant's request, arguing that Connor did not meet the fifth criteria for the safety valve relief sought. The Court held an evidentiary hearing at which Connor testified, as did SA Chris Smith, the case agent.

In 1994, Congress added the safety valve provision to 18 U.S.C. § 3553. Pub. L. 103-322, § 80001. To be eligible for a safety valve reduction below an otherwise applicable mandatory minimum sentence, a defendant must satisfy five criteria listed in § 3553(f). The five criteria were copied verbatim in the United States Sentencing Guidelines. USSG § 5C1.2(a)(1)-(5). The five criteria require that (1) defendant has no more than one criminal history point, (2) defendant did not use violence or threaten violence in committing the crime, (3) no one suffered death or serious bodily injury, (4) defendant was not an organizer, leader, manager, or supervisor in the offense, and (5) that not later than the time of the sentencing hearing, the defendant truthfully

2

provide to the government all information and evidence he has concerning his offense or related offenses. *Id.*; *see also United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996).

The parties agree that Connor meets the first four qualifying criteria.[1] The fifth criterion, however, is in dispute. Section 5C1.2(5) requires "an affirmative act by the defendant truthfully disclosing all the information he possesses," *Adu*, 82 F.3d at 124, and that he "give a full forthright account of his activities." *United States v. Rodriguez-Ruiz*, 2005 WL 3440343, at * 6 (6th Cir. Dec. 14, 2005) (quoting *United States v. Sabir*, 117 F.3d 750, 751 (3rd Cir. 1997) and citing *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001) (stating that defendant's "abbreviated statements" did not meet the fifth safety valve requirement that a defendant fully disclose information about acts associated with the offense); *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997) (holding that information provided by defendant was not complete enough to satisfy the safety valve requirement because it failed to describe the involvement of others in the relevant conduct); *United States v. Scharon*, 187 F.3d 17 (1st Cir. 1999) (holding that defendant must provide information beyond facts related to the particular offense to satisfy safety valve requirements)). The defendant has the burden of proving by a preponderance of the evidence that he qualifies for safety valve. *United States v. Harris*, 468 F.3d 422, 427 (6th Cir. 2006); *Adu*, 82 F.3d at 123-24.

Eligibility for the reduction requires more than simple acceptance of responsibility. Rather, this provision requires a defendant "to reveal a broader scope of information about the relevant criminal conduct to the authorities." *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (citation and internal quotation marks omitted). "These stringent requirements reflect the fact that the safety valve was intended to benefit only those defendants who truly cooperate." *Id*.

---

[1] Even though Connor has prior criminal history, including two prior drug felony convictions, he received no criminal history points for any of his criminal convictions because of their age.

(citation and internal quotation marks omitted). However, "the fact that the defendant has no relevant or useful other information to provide or that the government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." 18 U.S.C. § 3553(f); USSG § 5C1.2(a)(5). "The purpose of the Act was to 'permit a narrow class of defendants, those who are the least culpable participants in such [drug trafficking] offenses, to receive strictly regulated reductions in prison sentences for mitigating factors currently recognized under federal sentencing guidelines.'" *United States v. Dottery*, 259 Fed. A'ppx 812, 816, 2008 WL 118370 (6th Cir. Jan. 11, 2008).

On April 18, 2014, SA Smith, with Connor's attorney present, placed a telephone call to Connor, who was housed in a detention center in Ocilla, Georgia, to debrief him for safety valve purposes. Connor was reluctant to forthrightly answer Agent Smith's questions and the interview was stopped twice so Connor could confer with his attorney. Connor admits that he provided false, misleading and incomplete information to Agent Smith on April 18, 2014, although he became more forthcoming near the end of the interview after consultation with his lawyer. Agent Smith ultimately terminated the interview because it was going so poorly. Just prior to the July 30 sentencing hearing, Connor's attorney made a request of the assistant United States attorney handling this case that Connor be given a further debriefing.[2] The government refused.

As noted above, Connor testified at the evidentiary hearing. Agent Smith acknowledged during his testimony at the July 30 hearing that Connor had been more forthcoming at the July 30 hearing than he had been previously at the April debriefing. The United States continues to argue, however, that even in his July 30 testimony, Connor has not been completely forthright and has not truthfully admitted his own culpability or the full participation of others in the conspiracy.

---

[2] Connor did not explain why he waited until the eve of the sentencing before asking for another opportunity to debrief.

The Court agrees that Connor has not met his burden of establishing that he qualifies for safety valve. Even if the Court considers Connor's testimony at the July 30 hearing timely and meeting the requirement that he provide all information he has "to the Government" not later than the time of sentencing, he has not met the fifth criterion. First of all, the Court does not find Connor's July 30 testimony to be credible. Connor maintained, both in the interview with Agent Smith and in his testimony before the Court, that he did not come to Tennessee intending to purchase crack cocaine, but rather formed that intent after he arrived here. Yet he left North Carolina for Johnson City, Tennessee with approximately $4,000.00 in cash[3] to meet up with Tavares Dalton, whom he knew to be engaged in trafficking crack cocaine with his cousin, Demetrius Dalton, in Johnson City. Connor admitted he had talked with Tavares Dalton about the cost per ounce of crack cocaine while Tavares Dalton was in North Carolina; he also claims, however, that he came to Johnson City to convince Tavares Dalton to return to North Carolina to see his probation officer the following week. Very simply, Connor's explanation about his trip to Tennessee lacks credibility.

Second, Connor's account of these events is contradicted by other evidence in the case. Tavares Dalton stipulated that he had received multi-ounce quantities of crack cocaine at least once a month from his cousin, Demetrius Dalton, during the three months he was living with Connor and his sister. Connor testified that neither he nor Tavares Dalton were dealing drugs during that time. Connor testified that he arrived in Tennessee around noon on April 9, 2013, without any prior arrangements with Tavares Dalton. Tavares Dalton was intercepted in a telephone conversation with Demetrius Dalton at approximately 12:16 p.m. on April 9 during

---

[3] Even the amount of cash brought to Tennessee by Connor is unclear. Connor told Agent Smith he had borrowed $5,700 from his father and had given about $1,700 to his son for college expenses. At the July 30 hearing, Connor said he had given about $1,700 to $2,000 to his son, but had only $2,000-$2,500 of the cash when he got to Johnson City. He does not explain what happened to the remainder of the cash, although the Court notes that Tavares Dalton claimed he received $5,000 in cash from Connor on April 9.

5

which Tavares Dalton arranged a $5,000 purchase of crack cocaine from Demetrius Dalton, in part funded by a "g __d___ fat ass n____" who was coming to town with "about 3 bears." Connor admits that the reference in this telephone conversation is to him.

On July 24, 2014, Agent Smith and AUSA Regalia interviewed Tavares Dalton. Dalton stated that he began to live with Connor and his sister in February, 2013, and that within two weeks, Connor was asking about cocaine prices. Dalton said the calls he made prior to April 9 to his cousin Demetrius Dalton were on behalf of Connor, and phone records verified that calls were made during the relevant timeframe. According to Dalton, he contacted Connor from Johnson City on April 7 and told him to come to Tennessee to pick up crack cocaine. Connor arrived on April 9. Dalton received $4,500 from Connor initially for the purchase, but had to get an additional $500. All the crack cocaine Tavares Dalton obtained from Demetrius Dalton on April 9 was for Connor.

Finally, Connor also has not been completely candid about the participation of others. Although Connor admits he intended to sell the crack cocaine obtained on April 9, he claims he did not have a buyer identified. He only identified a potential buyer from "around the neighborhood" known as "Plump" or "Plumpy." Connor said he could not provide a correct name, address, phone number or any other information that could be used by Agent Smith to identify Plumpy. Without any of this information, it is difficult to conceive how Connor himself could have arranged the sale of the crack cocaine obtained from Demetrius Dalton in Johnson City on April 9.

In sum, Connor has not met his burden of establishing entitlement to safety valve by proving by a preponderance of the evidence that he provided the government all the information he has concerning his offense and relevant conduct. He has not been candid about his

6

involvement or the involvement of others. His request for sentencing below the mandatory minimum pursuant to the safety valve provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2(a) is therefore DENIED.

So ordered

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE